# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8340 | **DATE** | 8/1/2001 |
| **CASE TITLE** | Wisconsin Vendors, Inc. vs. Lake County, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/23/01 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for a preliminary injunction [13] is granted. A status hearing is set for 8/23/01 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

AUG 0 2 2001
date docketed

docketing deputy initials

date mailed notice

Document Number

courtroom deputy's initials RJ/ew

ED-7 FILED FOR DOCKETING
01 AUG -1 PM 4: 16

Date/time received in central Clerk's Office

mailing deputy initials



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WISCONSIN VENDORS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99 C 8340 |
| | ) | |
| LAKE COUNTY, ILLINOIS | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wisconsin Vendors, Inc. brought this action against Lake County under 42

U.S.C. § 1983, alleging that a Lake County ordinance unconstitutionally regulates activities that

are protected by the First Amendment. Plaintiff seeks a preliminary injunction preventing Lake

County from enforcing the challenged ordinance against plaintiff during the pendency of this

litigation. For the reasons set forth below, plaintiff's motion for a preliminary injunction is

granted.

### Background

Wisconsin Vendors operates a retail store, Select Video, in Lake County, Illinois. Select

Video sells and rents various items to the public, including books, magazines, newspapers,

videotapes, and other items. Prior to March, 2000, Select Video's inventory contained a mixture

of sexually explicit, but not obscene, materials and other materials that were not sexually

explicit.

Lake County Ordinance 6:1-15 requires that all "Adult Entertainment Establishments"

apply for and receive a license in order to conduct business in the County. The ordinance

provides that an applicant for a license must post a $5000 bond, in addition to a nonrefundable

$200 administrative processing fee. The bond is to be forfeited automatically to reimburse the Licensing Commission for any suspension or revocation proceedings unless the licensee is exonerated at such proceedings.[1] The ordinance further provides that the Adult Use Commissioner must either issue or deny a license, depending on compliance with certain criteria, within 30 days of receipt of a completed application.

The crux of the present dispute involves the definition of "Adult Entertainment Establishments" in the Lake County ordinance. The ordinance defines three separate categories of Adult Entertainment establishments: "Adult Cabaret," "Adult Store," and "Adult Theater." An Adult Store is defined as any commercial establishment that either contains viewing booths used to demonstrate Adult Materials, or "as a substantial or significant portion of its business offers for sale, rental, or viewing any Adult Materials," or has a "segment or section devoted to the sale or display of Adult Materials." Ord. 6:1-15, § 3B. "Adult Materials" are defined as any books, magazines, films, video cassettes, or other visual representations that are distinguished or characterized by an emphasis on the exposure, depiction, or description of certain specified anatomical areas or the conduct or simulation of certain specified sexual activities.

The parties agree that Select Video does not have any viewing booths. Plaintiffs assert that Select Video does not have a separate segment or section devoted to the sale or display of adult materials. Defendant, however, notes that the layout of Select Video prior to March, 2000 included "three separate free-standing video display racks in a tight configuration," which

---

[1] More accurately stated, a licensee whose license is revoked or suspended will forfeit only that portion of the bond that the Adult Use Commissioner shall deem necessary to reimburse the county for the costs associated with the revocation or suspension proceedings. Ord. 6:1-15, § 17B.4.

2

contained only adult videos. Defendant argues that this constitutes a segment or section devoted to the sale or display of adult materials.

Assuming for the moment that Select Video did not have a segment or section devoted to adult materials, then the critical question for determining whether Select Video was an "Adult Store" is whether or not offers of sale, rental, or viewing of adult materials constituted a "substantial or significant portion of its business." It is this phrase that lies at the heart of plaintiff's constitutional challenge.[2] Plaintiff argues that the phrase "substantial or significant portion of its business" renders the ordinance unconstitutionally vague, both facially and as applied to Wisconsin Vendors. Plaintiff also argues that the licensing ordinance is an unconstitutional prior restraint that gives the County authorities unbridled discretion in enforcement, as a result of the vague definition. Finally, plaintiff argues that the automatic forfeiture of the $5000 bond upon license suspension or revocation violates procedural due process.

When Select Video first opened, the plaintiff sought to avoid regulation as an Adult Entertainment Establishment. Adult Entertainment Establishments have restricted hours of

---

[2] Plaintiff is also arguably subject to regulation as an "Adult Theater," which is defined as a commercial establishment that "as a substantial or significant portion of its business features or provides films, motion picture, video or audiocassettes, slides or other visual representations or recordings that are distinguished or characterized by an emphasis on exposure, depiction, or description of specified anatomical areas or the conduct or simulation of specified sexual activities" or live performances which are distinguished by an emphasis on the same. Ord. 6:1-15, § 3B.3. The parties agree that Select Video does not offer live performances. Thus, the determination of whether Select Video was an Adult Theater depends on whether providing adult films, motion pictures, videocassettes, etc., constituted a "substantial or significant portion of its business." The plaintiff's challenge to this portion of the ordinance is identical to its challenge to the definition of Adult Store. Thus, the court's analysis of the Adult Store definition applies with equal force to the definition of Adult Theater.

operation and must be closed on Sundays and on state and federal holidays. Other regulations

apply specifically to Adult Stores, including limits on the size of exterior signage. Plaintiff

anticipated that these regulations would decrease business and profits. Thus, plaintiff consulted

with Lake County authorities in order to ascertain what level of adult materials, in comparison to

non-adult materials, would trigger regulation under the "substantial or significant portion" phrase

of the ordinance. On November 18, 1999, at the invitation of plaintiff, Select Video was

inspected by Lake County Zoning Administrator Sheel Yajnik, Senior Planner Eric Waggoner,

Deputy Director of the Planning and Development Building Division Michael Kuhar, and

Assistant State's Attorney Daniel Jasica. An agent of the plaintiff told the inspectors that there

were no viewing booths, that there were a total of 2100 videos for sale and/or rent, and that only

300 of those videos were adult material. The plaintiff's agent asked the inspectors several times

how to interpret the ordinance with respect to the "significant or substantial portion of its

business" phrase, and none of the inspectors provided an answer. The inspectors told plaintiff's

agent that they would report their observations to the County Board Chairman, who would make

the determination whether Select Video was an Adult Entertainment Establishment.

In a letter dated December 7, 1999, James LaBelle, the Lake County Adult Use

Commissioner, informed plaintiff that it had been determined that Select Video was operating as

an Adult Store, and because plaintiff had not applied for a license, it must cease operation or

reorganize within seven days. The letter did not explain the basis for the decision, nor did it

inform plaintiff what changes could be made in order to avoid regulation as an Adult Store.

Mark Phillips, the manager of Select Video, then wrote a letter to Commissioner LaBelle,

expressing a commitment to reorganization of the store, and inquiring about exactly what steps

needed to be taken to avoid classification as an Adult Store. Phillips also attempted to telephone Commissioner LaBelle. Phillips was later called by Eric Waggoner, who stated that he and Sheel Yajnik had been assigned to handle Select Video's attempt to comply with the Lake County ordinance. Phillips asked Waggoner what he should do to bring Select Video into compliance. Waggoner told Phillips that he needed to reduce the inventory of adult materials to less than a significant amount of the store's entire inventory. When Phillips asked Waggoner to clarify what a "significant amount" was, Waggoner chose not to give any numbers or percentages. In a letter to Phillips dated December 21, 1999, Waggoner stated:

> I would reiterate at this point that the term "substantial or significant portion of its business" is clear; for example, one could not reasonably assert that a "Blockbuster Video" store offers for sale, rental or viewing any adult materials as a substantial or significant portion of its business. I am certain the retail field offers many such examples.

(Def.'s Resp., Exh. B attached to Exh. 2). The letter further stated that Phillips' desire to focus on only the inventory or stock of Select Video was misplaced, and that the statute used the term "business," rather than "inventory." Waggoner suggested that the "dominant theme" and the "business purpose" of Select Video was to sell and rent adult videos, regardless of the percentage of non-adult materials in its inventory, because the non-adult materials appeared to be included solely to dilute the percentage of adult materials.

Plaintiff then reduced its amount of adult material at Select Video and sought a second inspection. Again, plaintiff was found to be an Adult Store, but no percentages or numbers were given to plaintiff to guide its efforts to comply with the ordinance. After plaintiff had commenced this action challenging the constitutionality of the ordinance, Lake County filed a

lawsuit in Illinois state court alleging that Wisconsin Vendors was operating in violation of the ordinance. On March 1, 2000, Wisconsin Vendors applied for a license as an Adult Store. The County granted its application and subsequently dismissed its enforcement action in state court. Following its receipt of an Adult Store license, Select Video reorganized so that it is now operating with 100% of its inventory in adult materials. Select Video is now subject to the operating regulations described above, which it claims has resulted in a decrease in business and profits. Plaintiff has made clear that it wishes to determine with specificity the percentage of adult materials that it may stock without being classified as an Adult Store, so that it may choose to stock its store in a manner that will avoid regulation as such. Select Video has moved this court to enter a preliminary injunction prohibiting Lake County from enforcing Ordinance 6:1-15 against it while this case is pending.

## Analysis

### *Standing*

As a threshold matter, Lake County argues that Wisconsin Vendors lacks standing to challenge the ordinance, either facially or as it applies to Wisconsin Vendors in this case. In order to establish standing a plaintiff must demonstrate: "(1) injury in fact (the actual or imminent invasion of a concrete and particularized interest), (2) causation (a causal connection between the defendant's actions and the injury), and (3) redressability (the likelihood that the injury is redressable by a favorable court decision)." *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 951 (7th Cir. 2000) (citations omitted). Wisconsin Vendors asserts that it is being continually injured by the application of the ordinance to Select Video because the regulations set forth in the ordinance, such as restrictions on the hours of operation, have caused a decrease in

Select Video's profits. (Phillips Decl. at ¶¶ 23-26). In addition, Wisconsin Vendors is being injured simply by the application of restrictions to its First Amendment freedoms. If the court finds the ordinance unconstitutionally vague, facially or as applied, the court could enter an order enjoining the enforcement of the ordinance against Wisconsin Vendors, thus redressing the continuing injury.

Lake County makes two arguments with respect to standing. First, Lake County asserts that Wisconsin Vendors lacks standing because Select Video currently operates with 100% of its inventory consisting of adult materials. Second, Lake County argues that, even before Select Video's decision to sell only adult materials, there was a segment or section of the store devoted to the sale of adult materials, thus bringing Select Video unambiguously within the reach of the ordinance. The court finds these arguments unpersuasive.

Lake County's first contention is that because Select Video currently rents and sells only adult materials, its business clearly falls within the core of activity targeted by the ordinance. Under *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 58-61 (1976) and *Genusa v. City of Peoria*, 619 F.2d 1203, 1209-10 (7th Cir. 1980) a plaintiff does not have standing to challenge an ordinance on vagueness grounds if the ordinance is "sufficiently precise to leave plaintiffs in no doubt about whether their actions are covered." *Genusa*, 619 F.2d at 1209. Here, there is no question but that Select Video, as it currently operates, is covered by the licensing ordinance.

In the First Amendment context, there is an exception to this rule permitting a plaintiff to vicariously raise the First Amendment interests of others, even if the application of the ordinance to the plaintiff is clear. *See id.* at 1210. The parties argue vigorously over whether the exception applies in this case, such that Wisconsin Vendors could assert the First Amendment interests of

7

other persons not presently before the court. The court finds no need to address this issue because Wisconsin Vendors has standing to litigate its own First Amendment interests. Lake County emphasizes Select Video's current inventory configuration, claiming that the court should give no weight to Select Video's organization prior to March 31, 2000. But Lake County's position misconstrues the nature of the controversy. Select Video is operating at 100% adult materials only *because* the County enforced the ordinance against the store. Wisconsin Vendors does not want to be licensed and regulated as an Adult Entertainment Establishment. Wisconsin Vendors sought to avoid regulation, but was unable to determine with a fair degree of precision the upper limit of adult materials that Select Video may carry before triggering regulation. Although Wisconsin Vendors has now obtained a license, submitted to regulation, and maximized the percentage of adult materials in its inventory, it clearly intends to reduce the percentage of adult materials in its inventory below the limit triggering regulation - as soon as it finds out what that limit is. Lake County enforced the ordinance against Wisconsin Vendors without providing the guidance Wisconsin Vendors requested, and Wisconsin Vendors has indicated its intent to operate below the limit in order to avoid regulation. Further, the history of the case clearly indicates that should Wisconsin Vendors reduce its inventory of adult materials to an amount similar to its pre-March levels and withdraw from its license as an Adult Entertainment Establishment (as it seeks to do), the County would seek to enforce the ordinance against it. In these circumstances, a live controversy remains.

Lake County's second argument is that even if the court looks at Select Video's prior organization, its store configuration at that time placed it within the core of activity regulated by the ordinance. Lake County points to evidence of "three separate free-standing video display

racks in a tight configuration" that contained exclusively adult videos. (Def.'s Resp. at 4) (citing Yajnik Aff. at ¶ 10; Waggoner Aff. at ¶ 17). This configuration, Lake County argues, constitutes a "segment or section devoted to the sale or display of Adult Materials," making Select Video an Adult Store under the ordinance. *See* Ord. 6:1-15, § 3B.2. In its reply brief, Wisconsin Vendors complains that the racks were never mentioned in response to its requests for guidance in reorganization, and that the issue of the racks was not raised until Lake County filed its brief in response to the motion for a preliminary injunction. The record supports Wisconsin Vendors' complaint. In the correspondence between Wisconsin Vendors and the County concerning what needed to be done to avoid regulation under the statute, the three racks were never mentioned. Rather, the County continually stressed that Wisconsin Vendors would need to reorganize such that the sale or rental of adult materials was no longer a substantial or significant portion of its business. (Def.'s Response, Exh. 2 at ¶ 5; Exh. B attached to Exh. 2). That the County never informed anyone at Wisconsin Vendors that the tightly configured racks were sufficient to constitute a "segment or section devoted to the sale or display of Adult Materials" is telling. It suggests that the tightly configured racks do not fall within the core of activity that the statutory phrase was intended to cover. The three racks are in an alcove of the store that contained general materials on the outer walls. (Def.'s Response, Exh. 1 at ¶¶ 10-11, and attached layout). Whether such a tight configuration of three racks of adult materials, surrounded by general materials, amounts to a "segment or section devoted to the sale or display of Adult Materials" is unclear. Presumably Eric Waggoner's letter to Mark Phillips, dated December 21, 1999, would have mentioned the racks if the County had truly believed that such a configuration constituted such a  segment or section. In light of the circumstances, the court is unwilling to find that the

9

three racks placed Select Video within the core of regulated activity. Thus, at this initial stage, the plaintiff appears to have standing to raise its constitutional challenges to the ordinance.

### *Preliminary Injunction Standards*

In order to obtain a preliminary injunction, a plaintiff bears the burden of demonstrating: "(1) its case has some likelihood of success on the merits;  (2) that no adequate remedy at law exists;  and (3) it will suffer irreparable harm if the injunction is not granted." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (stating the standards for preliminary injunction). If the court is satisfied that these requirements have been met, then it must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* Finally, the court must also consider how the public's interests would be affected by granting or denying the preliminary relief. *Id.* The court, considering all of these factors, is to apply a "sliding scale" approach – "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.*

In cases where the threatened harm is the deprivation of plaintiff's First Amendment right to free expression, the general rule is that irreparable harm will be presumed. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998). A plaintiff asserting denial of First Amendment rights also lacks an adequate remedy at law. In First Amendment cases, "the quantification of injury is difficult and damages are therefore not an adequate remedy." *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982); *see also National People's Action v.*

*Village of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990). The County argues that Wisconsin Vendors can be adequately compensated for the loss of operating hours with money damages. But the loss of profits due to reduced operating hours is only one aspect of the regulation's effect. The regulation also limits Select Video's freedom of expression by placing restrictions on the times that Select Video can offer its products for sale. Thus, the court in this case adheres to the general rule that an allegation of a First Amendment deprivation is sufficient to show irreparable harm.

The County makes no arguments respecting the balance of harms or the public interest. The County presents no evidence of any harm to itself or to the public interest if a preliminary injunction is entered. The court presumes, however, that a preliminary injunction would have some detrimental effects on the public's interest. For instance, adult materials would be more readily available on Sundays, holidays, and without restrictions on hours of operation. This could magnify the adverse secondary effects that attend the sale, distribution, or display of sexually oriented materials. Such effects include the deterioration of residential neighborhoods, negative impacts on the availability and quality of housing, and the possibility of increased criminal activity. Indeed, the stated purpose of the ordinance was to curb or minimize such secondary effects. (Ordinance at 1-3). These harms are obviously difficult to quantify, and somewhat speculative, given that the County has not presented any evidence establishing a link between the unrestricted operation of Select Video and any of these detrimental effects. On the other side of the scale, it is clear that Wisconsin Vendors' First Amendment freedoms are being restricted – a serious and irreparable injury. Additionally, Wisconsin Vendors has presented evidence showing that it is losing customers and profits because of the ordinance's restrictions.

11

In this court's opinion, the balance of harms at this stage appears to favor plaintiff.

The County focuses its argument primarily on the first requirement for a preliminary injunction – the likelihood of success on the merits. The court now turns to that question. Wisconsin Vendors alleges three separate constitutional violations: 1) the ordinance is unconstitutionally vague in violation of the First Amendment; 2) the ordinance's licensing scheme is an unconstitutional prior restraint in violation of the First Amendment; and 3) the automatic bond foreclosure provision of the ordinance violates the Due Process clause of the Fourteenth Amendment.

*Vagueness*

The Supreme Court explained the void for vagueness doctrine in *Grayned v. City of Rockford*:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

408 U.S. 104, 108 (1972) (internal quotation marks, alteration indications, and citations omitted).

Although the doctrine was developed in criminal cases, courts have "transplanted" the principle to the First Amendment setting. *See New Jersey Freedom Org. v. City of New Brunswick*, 7 F. Supp.2d 499, 514 (D. N.J. 1997) (quoting *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992)). Thus, a law restricting speech is impermissibly vague if it fails to provide fair notice to reasonable persons of what is prohibited, or if it fails to provide reasonably clear guidelines for law enforcement officials, resulting in a "chilling" effect on speech protected by the First Amendment. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497-99 (1982) (noting that a "more stringent vagueness test should apply" where a law interferes with the right of free speech). The Court has stated that these standards should not be "mechanically applied," but rather should be considered in light of the nature of the enactment. *See Village of Hoffman Estates*, 455 U.S. at 498.

The regulation of adult-oriented establishments that sell sexually explicit but non-obscene materials through the use of ordinances similar to the one at issue here touches upon First Amendment freedoms. *See generally Genusa*, 619 F.2d at 1208; *Ellwest Stereo Theater, Inc. v. Boner*, 718 F. Supp. 1553, 1562 (M.D. Tenn. 1989).[3] Here, Wisconsin Vendors argues that the

---

[3] The County points out that businesses selling sexually explicit materials enjoy somewhat less protection than those engaging in other forms of speech. *See DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 827 (7th Cir. 1999). Thus, time, place, and manner restrictions that regulate merchants selling such materials will be analyzed under the more lenient content-neutral standards, despite the fact that such regulations are, in actuality, content-based. *See id.* at 828 (citing *Young*, 427 U.S. at 70-71). Nonetheless, the Supreme Court has made it "perfectly clear" that sexually explicit, non-obscene materials are protected by the First Amendment. *See Reno v. ACLU*, 521 U.S. 844, 874 (1997). Even though the government's burden of justifying ordinances like the one enacted by Lake County may be reduced, the vagueness concerns remain – business owners should have fair notice of whether the regulations apply to their businesses, and law enforcement officials must not have unfettered discretion in deciding which businesses are

phrase "substantial or significant portion of its business" is impermissibly vague in that it does not provide a person of ordinary intelligence with fair notice of what level of business (however that word might be interpreted) is enough to trigger regulation under the ordinance. Wisconsin Vendors further contends that the phrase improperly delegates to law enforcement officials an excessive degree of discretion to interpret and apply the law.

Although the court is not convinced, at this stage, that the phrase "substantial or significant portion of its business" is necessarily unconstitutionally vague, the court nevertheless concludes that Wisconsin Vendors has shown a sufficient likelihood of success on the merits to compel the entry of a preliminary injunction. The circumstances of this case are especially telling. Wisconsin Vendors, through its agents, repeatedly sought clarification of exactly what it was required to do to avoid regulation under the ordinance. The County never responded with anything more concrete than distinguishing plaintiff's store from a Blockbuster Video store. After Wisconsin Vendors asked for a quantification of what percentage of adult materials needed to be removed, the County representative indicated that he would not engage in such an inquiry. (Def.'s Response, Exh. B attached to Exh. 2).[4] Although a business owner should be expected to carefully review a governing statute, and perhaps even to inquire of the County officials about

covered.

[4] The December 21, 1999 letter from Eric Waggoner suggests that plaintiff is focusing too narrowly on only inventory, while the ordinance uses the term "business." But this simply points out an additional ambiguity. There is evidence to support the finding that in earlier correspondence with Wisconsin Vendors, the County suggested that the inventory of adult materials needed to be reduced to avoid regulation. (Phillips Decl. at ¶ 9). But the Waggoner letter suggests that the County might also consider the "dominant theme" or the "business purpose" of the store, in addition to the makeup of its inventory, leaving Wisconsin Vendors with no clear sense of what factors are determinative.

the gray areas, he should not be forced to accept a repeated trial-and-error enforcement mechanism because the County refuses to engage in any attempt to clarify the reach of the statute. The facts of this case highlight the central concerns of the *Grayned* court: Wisconsin Vendors was unable, even upon repeated inquiry, to fairly discern whether its business was in violation of the ordinance, and County enforcement officials (namely Jim LaBelle and Eric Waggoner) have been able to exercise virtually unfettered discretion concerning whether or not Select Video is subject to regulation under the ordinance.

The County advances several arguments in response. First, it contends that the plaintiff's goal is improper. The County contends that Wisconsin Vendors is improperly attempting to avoid regulation by stocking a number of shelves with out-of-date, general interest materials in order to dilute the percentage of inventory that is composed of adult materials. Even if the court assumes this to be true, it does not change the constitutional inquiry. The court's task is to examine the language of the ordinance and to determine whether it provides adequate notice and minimal guidelines for law enforcement. Whether or not plaintiff had a good faith motive to sell any of the non-adult stock is not relevant to this inquiry.

Second, the County reformulates the arguments it made with respect to standing. The County argues that Select Video's current inventory configuration precludes Wisconsin Vendors from presenting an "as applied" vagueness challenge. The County further contends that the three free-standing, tightly configured racks clearly constituted a "segment or section devoted to the sale or display of Adult Materials," such that there was no uncertainty in the application of the ordinance to the plaintiff. For the same reasons these arguments were misguided when directed at plaintiff's standing, they are unpersuasive at this stage of the analysis. The question is not

15

whether the ordinance is vague as applied to Select Video's current operations, but rather, whether it is impermissibly vague as applied to Select Video's former (and intended) operations. The court is also unpersuaded that the tightly configured racks make the application of the ordinance to the Select Video store unambiguous. Were this truly the case, the County surely would have pointed out to Wisconsin Vendors that the racks constituted a "segment or section devoted to the sale or display of Adult Materials," rather than repeatedly engage in discussions over whether the sale or rental of Adult Materials comprised a "substantial or significant portion of [Select Video's] business." The December 21, 1999 letter reveals that the County was focusing on the latter phrase, taking the position that Wisconsin Vendors was subject to regulation under that phrase.

Next, the County argues that the language "substantial or significant portion of its business" is not impermissibly vague because the terms "substantial" and "significant" have been found by other courts to be sufficiently precise. The County relies on a number of cases dealing with similar statutes, including: *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir. 1994); *Nortown Theatre Inc. v. Gribbs*, 373 F. Supp. 363, 367 (E.D. Mich. 1974), *aff'd on other grounds sub nom. Young*, 427 U.S. 50; *15192 Thirteen Mile Rd. v. City of Warren*, 593 F. Supp. 147, 155 (E.D. Mich. 1984); *15192 Thirteen Mile Rd. v. City of Warren*, 626 F. Supp. 803, 820-21 (E.D. Mich. 1985); *Golden Triangle News, Inc. v. Corbett*, 689 A.2d 974, 984-85 (Pa. Commw. Ct. 1997); and *City of Chicago v. Scandia Books, Inc.*, 430 N.E.2d 14, 18 (Ill. App. Ct. 1981). The County also points to other cases using related language, such as "major business" or "primary business." *See Stansberry v. Holmes*, 613 F.2d 1285 (5th Cir. 1980); *SDJ, Inc. v. City of Houston*, 636 F. Supp. 1359, 1367-68 (S.D. Tex. 1986), *aff'd* 837 F.2d 1268 (5th

Cir. 1988); *N.W. Enterprises, Inc. v. City of Houston*, 27 F. Supp. 2d 754 (S.D. Tex. 1998); *Mayo v. State of Texas*, 877 S.W.2d 385, 388 (Tex. App. 1994). Wisconsin Vendors relies on only a few cases, with its strongest support coming from *Ellwest Stereo Theater*, 718 F. Supp. at 1581.

The court initially notes that none of the cases squarely addressing the vagueness issue presented here are binding precedent on this court.[5] In these circumstances, the court cannot simply accept the conclusion reached by the majority of courts to face the issue. Rather, it has reviewed the rationales and legal principles underpinning the decisions, and examined those in light of the facts of this particular case. After carefully reviewing the case law cited by both parties and the legal arguments made by the parties, this court concludes that Wisconsin Vendors has shown a sufficient likelihood that the phrase "substantial or significant portion of its business" will be found unconstitutionally vague as it was applied to Wisconsin Vendors.

First, some of the cases cited by the County are distinguishable in meaningful ways. For instance, at least one of the cases involved a facial challenge in which the plaintiff's conduct was unambiguously covered by the statute. *See, e.g., Mayo*, 877 S.W.2d at 389. As discussed above, this situation, addressed definitively by the Seventh Circuit in *Genusa*, is not present here. Further, some of the cases involve nude dancing, which enjoys less protection under the First Amendment than the dissemination of sexually explicit printed materials. *See Stansberry*, 613 F.2d at 1288 (explicitly distinguishing bookstores); *SDJ*, 636 F. Supp. at 1363. Finally, the most important distinction is that in none of the cases cited by the County did the government's actions speak so loudly as they did here. The "as applied" vagueness challenge in this case is

---

[5] *Scandia* was decided by an intermediate Illinois state court and, hence, is not binding on a federal court interpreting the U.S. Constitution.

supported by evidence of the County's actions. The County inspectors, including the County's Assistant State's Attorney, refused to provide an opinion on whether Select Video was in violation, deferring to the judgment of the County Board chairman. Despite repeated requests for clarification, Wisconsin Vendors received little or no guidance from the chairman or other County officials. The best that the County could do was to compare the business of Select Video to Blockbuster Videos - a business that obviously falls at one extreme end of the spectrum. But as Wisconsin Vendors points out, that is really no guidance at all, for there must be some level of sales, rentals, or inventory of adult materials (above zero) that does not constitute a "substantial or significant portion of [a] business."

In this respect, this case most closely resembles *Ellwest*. In *Ellwest*, the plaintiffs challenged the phrase "substantial or significant" in a similar ordinance. A City official first testified that the phrase meant greater than half of what a bookstore offers for sale. Later, he changed his testimony, indicating that the phrase could not be quantified, and might cover bookstores that sold less than fifty percent adult materials. Then, he testified that the determinative factor was not the percentage of adult materials sold, but the activities that occurred in the bookstores. The court found the ordinance vague, noting:

> The Court finds it extremely revealing that a representative of the Health Department, the agency charged with administering this ordinance, was unable to determine under the ordinance which establishments it was entitled to regulate. Clearly, if the regulating authority cannot determine the establishments which are subject to its authority, the establishments themselves cannot be expected to determine whether they need to be licensed or not.

*Ellwest*, 718 F. Supp. at 1580. The County's actions and correspondence with Wisconsin Vendors in this case presents a similar picture. County officials do not have a clear idea of which

18

businesses they may regulate, and as a result, have been unable to provide Wisconsin Vendors with sufficient guidance to determine whether or not it needs a license.

Aside from these distinctions, the court finds another reason to disregard the County's cases. None of the County's cases set forth a compelling rationale for finding that the words "substantial" or "significant" are not vague as used in this ordinance. The analysis provided in most of the County's cases is limited to: 1) a recital of cases reaching similar conclusions, 2) an observation that statutory language need not provide mathematical precision, and 3) a discussion of how many times the word "substantial" or "significant" appears in the U.S. Code or other statutes. Such superficial analysis is not persuasive.

It is true that we can never expect "mathematical certainty" from the language of our statutes. *See Grayned*, 408 U.S. at 110. Nonetheless, in the context of statutes that may restrict First Amendment rights, courts demand a more "narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Although mathematical precision is not required, the court finds that more precision may be necessary than the phrase "substantial or significant portion of its business," especially where the governing body is unwilling or unable to provide any clarification, other than distinguishing plaintiff's business from a business that offers *no* adult materials whatsoever. This is just the sort of situation that provides insufficient notice to those potentially regulated by the statute, and permits the enforcement officials to exercise virtually unfettered discretion in interpreting the statute.

The argument most heavily relied upon in the opinions cited by the County is that the words "substantial" and "significant" cannot be viewed as too vague because they appear in many statutes throughout the U.S. Code. *See, e.g., 15192 Thirteen Mile Road*, 626 F. Supp. at

820-21 (quoting *Nortown*, 373 F. Supp. at 367, and noting that the term "substantial" appears in the Code 1157 times, while the phrase "substantial portion" appears 51 times). But these cases do not carefully examine the contexts in which these terms are used, nor do they discuss whether these other statutory provisions have ever been challenged on vagueness grounds. Most importantly, the cases never point to the use of the terms in statutes that restrict First Amendment freedoms. In *15192 Thirteen Mile Road*, the court used as an example the public accommodations provisions of the 1964 Civil Rights Act. That statute, stating that a business will be said to affect interstate commerce if "a substantial portion of the food which it serves . . . has moved in commerce," would likely survive a vagueness challenge because it does not restrict First Amendment freedoms. 42 U.S.C. § 2000a(c). But where, as here, the statute regulates speech, it will be held to a stricter standard of permissible vagueness. *See Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S. 610, 620 (1976) ("[A] man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.") (quoting *Smith v. California*, 361 U.S. 147, 151 (1959)).

On the record at this point, Wisconsin Vendors has shown a likelihood of success on the merits of an "as applied" vagueness challenge to the ordinance. The factual history of this case reveals that Wisconsin Vendors is unable to determine what it must do to avoid regulation. The County's conduct and correspondence with Wisconsin Vendors highlights the wide range of discretion that the enforcement officials have been granted, opening the door for arbitrary and discriminatory enforcement of the ordinance. On these facts, the court concludes that Wisconsin Vendor's motion for a preliminary injunction must be granted.

*Prior Restraint and Due Process*

Wisconsin Vendors next argues that the licensing scheme constitutes an unconstitutional prior constraint in violation of the First Amendment because it requires governmental permission before speech may be disseminated and it vests the governing authority with an impermissible degree of discretion in granting or denying such permission. Wisconsin Vendors also argues that the automatic bond forfeiture provision of the ordinance violates Fourteenth Amendment due process principles. Because the court has concluded that Wisconsin Vendors has shown a likelihood of success on its "as applied" vagueness challenge to the ordinance, the court need not consider these issues at this stage.

## Conclusion

Wisconsin Vendors has sufficiently shown a likelihood of success on the merits of its vagueness challenge to Ordinance 6:1-15, as it has been applied to Wisconsin Vendors (under Select Video's previous configurations). Having met all of the other requirements for entry of a preliminary injunction, plaintiff's motion for a preliminary injunction is granted. Accordingly, the court hereby orders the County to refrain from enforcing Ordinance 6:1-15 against Wisconsin Vendors during the pendency of this litigation, should Select Videos return to a configuration roughly equivalent to its configuration at the time of inspection on November 18, 1999.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: August 1, 2001